Good morning, your honors. May it please the court. My name is Quinn Denner. I represent Raymond Carrasco, the petitioner. The issue that we've brought before the court is whether he was denied his right to due process by the state trial court's failure to hold a hearing into his competency. The test that the Supreme Court has set for competency is whether the defendant quote has sufficient present ability to consult with his lawyer with a reasonable degree of understanding and whether he has a rational as well as actual understanding of the proceedings. The Supreme Court also says that a key part of competency is the capacity to make a series of decisions. In this case, Mr. Carrasco was faced with a series of decisions and made those decisions. He made the decision, for instance, to go to trial in this case, facing a mandatory sentence in effect of life rather than trying to resolve it by some plea bargain. Mr. Denner, one of the things that troubles me is there was no indication of any problem during any of the proceedings and his lawyer didn't raise any issue under 1368 of the penal code with the trial court. And as I understand it, he was also examined by a mental health professional who didn't say a word to anybody about competency. Applying the deferential AEDPA standard, how do we get over that hurdle? Well, Your Honor, I think, let me address each of those if I can. Sure. Because the State has not addressed the neuropsychological tests in any way at all. And I can go through those and they show that this man had a terrible cognitive impairment from being hit by the train and the organic brain damage he suffered. No, we've read all that, but at no point did the psychologist or psychiatrist, I can't remember what she was, say to either the court or to counsel, look, I don't think this guy's competent. Well, here's the point I'm making as to all those. Let's talk, first of all, was there any kind of acting out or bizarre behavior or something of that nature? That type of, that can quite often be an indicator of incompetence, but it usually comes from certain kinds of mental incapacity such as psychosis or something. What we're talking about here is an impairment of his ability to think, remember, decide, and it's not the kind of impairment that would lead to bizarre behavior. It also is not the kind of impairment that would become clear to defense counsel. Well, how would the judge then, sua sponte, be able to detect it? Well, Your Honor, because the neuropsychological tests that show that he had this organic brain damage that left him with an IQ of 77, huge impairments, and I can go through those again. But not everyone with organic brain damage is incompetent. No, but when you have the severity of this brain damage caused by being hit by the train, there's certainly a reasonable doubt as to whether he is incompetent, and there ought to be a hearing as to that. Counsel, how were these things brought to the attention of the court in a timely manner? Because Dale Watson, who was a neuropsychologist who ran a series of tests over 4 days, 14 hours, testified as to all the tests that were given. He then directed his testimony only to the part, to the question of whether the brain damage impaired his ability to control his behavior and led to irritability and things of that nature. But why, I'm still having a hard time looking at this through the eyes of the trial judge. If he's got an eminently qualified mental health professional who's done such extensive testing, how hard is it to expect Dr. Watson to give some indication either to the defense attorney who hired him or the trial court that he's testifying before that there's a problem here with even proceeding against this? Because he was not asked to address that in any way. And, Your Honor, there are two cases. One, the United States Supreme Court case of Drogbe, Missouri, where the court said they found that there was a denial of due process and failing to hold a hearing. They said it does not appear the examining psychiatrist was asked to address himself to medical facts bearing specifically on the issue of Petitioner's competence to stand trial as distinguished from his mental and emotional condition generally. Also, an early case you had, Ray B. White, same thing happened. In other words, he was examined, but the direction was for one thing, and it wasn't into competency. And the court said that is not determined. Do we have anything in the record at this point, in the habeas record, that concludes that he was not competent? Is there an opinion from anybody to that? No, Your Honor. This is a habeas that Mr. Carrasco, with the help of a jailhouse lawyer, brought at the district court level, and I was appointed by the court. So the issue that we really have to decide is whether or not it was objectively unreasonable for the California courts to rule that the trial judge had no obligation on this record, sua sponte, to order a 1368 hearing. Correct. We're not asking the court to determine whether he's competent because I don't think there's enough information. What we're saying is that the trial court should have said, okay, Dr. Watson, I want you to tell me, is this man competent so we can hold a hearing on that question instead of letting him go forward? He made some serious decisions here, Your Honor. He made a decision not to take the stand. That's a big thing in a case like this where they're already bringing in all this prior crime evidence against him. He decided not to go to a jury instead of to a judge with all that other crime evidence, and he walked into a sentence of 119 years to life for uttering some threats that he didn't take one step to carry out. So those were huge decisions to be made by somebody who's in the bottom percentile. He had a fairly lengthy history of making some pretty severe threats. Those were all prior to the point when he was run over by a train and suffered this severe brain damage. Things changed quite a bit after that. So he made these huge decisions, but the nature of this cognitive inability, and we've laid it out for you, you know, he had memory problems. He had problems understanding. He couldn't bring things back. He got confused during tests. He sits there and just goes forward, and the defense counsel just assumes, well, he must be doing okay. He's not complaining or anything like that. And we think that the court, given what's at stake here, and he was faced with these decisions, and these tests really put him way down there. I mean, you know, less than the first percentile on key things, memory problems. As we look at each of these decisions, none of them appears to be irrational. Maybe they were wrong decisions, and maybe a more thoughtful or more foresightful person would have made other decisions. But it's not a situation where he fails to cooperate with his counsel, fails to be able to respond. It's a very odd case in my view in that, indeed, there was a lot of indicia that this fellow really had a lot of difficulty after the train accident, but the test is whether he was able rationally to cooperate with his counsel. And to make those decisions. That's correct, Your Honor. Yes, and he had a counsel who didn't seem to think it was important enough to ask the judge to have a competency hearing. I find it a difficult case. Well, I think it is, Your Honor. And I think what you have to consider is, in some ways, Mr. Carrasco is more like someone who was developmentally disabled or retarded. That's the nature of, can he process things? Can he understand what he's supposed to decide? He's not, it's not a question of some psychosis or things of that nature. It's more just his limited ability to assist counsel. Well, the question really is, was he rationally cooperating with counsel? And, Abel, was he, was there a, should there have been a reasonable doubt about his ability to cooperate with counsel and to make those kinds of decisions he had to make? And so who should decide that, his counsel or the judge? Well, I think when the judge heard the results of these neuropsych tests, which were uncontroverted, and there was no question he was not malingering, I think the judge should have then said, I need to know more about this. Dr. Watson, tell me, tell me, where is he on competence? Or let's point to someone else. Is there a case that you can cite that supports the proposition that solely on the basis of neuropsychological exams, the judge has a sui sponte responsibility to order determination of competency? Is there a case that says that? No, I don't know, Your Honor. Usually it's a combination of things. I don't, I don't know that there is a case. I was not able to find one where that was the determinant of the thing. But I would ask the Court to analogize it with somebody who is developmentally disabled, retarded, and trying to, being forced to go to trial and unable to, maybe going along with everything and nodding, but not really functioning properly. But I have not found a case like that, one way or the other. I haven't found one that's said the other way, either. Looked at those and said, well, this isn't enough. If that's the case, then under, what is it, Knowles, I think, versus Miyazaki, or I can't pronounce it correctly, where there is no Supreme Court authority on point, how can we declare it objectively unreasonable for the California courts to conclude? Well, Your Honor, because, because that is a fact, that is so factually oriented. I, we're asking the Court to apply the broad standards of Dusky v. United States, Strobe v. Missouri, the broad statement that if there is a reasonable doubt as to, as to whether there's competence, then there has to be a hearing. The Court has found that in a number of cases there's been unreasonable applications of that based on certain facts. But I don't think there's any requirement that facts have to be the same. All right. Thank you very much, Mr. Demers. Thank you, Your Honor. Ms. Crenson. Good morning. May it please the Court. My name is Tammy Crenson. I represent the warden, Kernan. Based on this record, there is support for the fact that Mr. Carrasco suffered cognitive impairment and had a mood disorder. However, there's no support, no indications that, for a finding of incompetency, and certainly no reason for the trial court to have sua sponte, ordered a competency hearing. The factors the United States Supreme Court has discussed in determining whether there should be incompetency or a trial court should inquire into incompetency is irrational or erratic behavior, demeanor in court, a medical opinion regarding competency. None of that exists here. And there certainly was no indication that Mr. Carrasco was having any ability consulting his attorney. His attorney didn't raise any concerns. And I think it's important to note that in front of the trial court at the time of trial, the expert himself even testified that, based on the jail records, that Mr. Carrasco was stabilized and his mood was fine with Depakote and he was feeling good. And in this case, we even have more than just him not knowing what was going on. We have a professional, his own expert, saying he was doing fine while in jail. Counsel, what's your response to opposing counsel's observation that the expert was never asked to opine on competency? The expert was asked to give an opinion as to how the accident affected his behavior. And I think it's, especially under a standard like the ADPA, I think counsel, the fact that counsel never asked that expert to determine if he was incompetent, is a strong indication that there were no concerns with competency. And certainly when we look to see if there's an unreasonable determination of the facts, that it's reasonable to think that his attorney didn't have a problem, the trial court didn't have a problem. He was actually, his defense was that his accident was causing him to act in a way that was not normal and these threats were not serious. And so there was no indication there was any concerns regarding competency and no reason for anyone to ask that. It's really rather odd that his counsel wasn't perceptive enough to ask for a competency hearing because he did have subpar IQ, he did have brain impairment, and he did have a long history of completely irrational conduct. So it is a puzzling part about this case that there wasn't a competency hearing, there wasn't advice from the psychiatrist about it. Well, there are people with cognitive impairment who certainly are not incompetent. And in a situation, in this situation, again, the record does not indicate any reasons there should have been any question of that. And the standard is able to consult with an attorney and able to understand the proceedings. And certainly people with cognitive impairment, there are many people who would be able to do that. And, again, the fact that nobody questioned his conduct in trial, nothing indicated that there were any concerns. And all the cases that have found that a competency hearing should have been held were extremely erratic behavior, psychotic episodes, a long history of psychiatric treatment. Here we have someone that for trial purposes saw a psychologist to determine how the accident affected his behavior. It wasn't a long history of psychiatric treatment or any indication he had had any psychotic episodes. Counsel, what's your response to opposing counsel's argument that the test results themselves should have raised a reasonable doubt in the judge's mind regarding the competency? Again, there's no U.S. Supreme Court precedent that sets that as a standard. Again, the standard has been high regarding conduct that actually occurred at trial and during trial. But also, again, test results don't necessarily indicate that someone who has some cognitive impairment is incompetent. And I don't think those test results alone can indicate that somebody is incompetent. And, again, even if one could differ on that opinion, thinking that that should raise a red flag, there's no U.S. Supreme Court cases or even cases with this court that have indicated that any testing alone is enough. It's focused on the behavior at trial, the demeanor at trial, the erratic behavior, psychotic episodes, suicide attempts during trial, things that indicate somebody really has a mental deficiency. Unless there are any further questions, respondent will submit. I think not. Thank you, counsel. Thank you. The case just argued is submitted.
judges: Fletcher B. , Tallman, Rawlinson